## AVERY et al. *v.* LAUVE et al.

An express authority is necessary in order to bind another by the execution of a promissory note.

A partnership may be contracted to take effect at a future time, or upon certain conditions.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

C. A. *Jones,* for the plaintiffs. *Sigur* and *Bonford,* for the appellants, contended that the defendants were not bound by the note, citing *Atwood* v. *Munnings,* 7 Barn. & Cress. 278 (14 Eng. Com. Law Rep. 42). *Greenslade* v. *Dower,* Ibid. 635 (14 E. C. L. R. 106). *Dickinson* v. *Valpy,* 10 Ibid. 128 (21 E. C. L. R. 41). *Bramah* v. *Roberts,* 3 Bing. N. C. 963 (32 E. C. L. R. 404). *Emly* v. *Lye,* 15 East. 7. *Hill* v. *Bannister,* 8 Cowen, 31. *Lloyd* v. *Freshfield,* 2 Carr & Payne, p. 325 (12 E. C. L. R. 149).

The judgment of the court was pronounced by

SLIDELL, J. This suit is brought upon a promissory note of the following tenor :

" Dolls. 504 55. Cincinnati, Sept. 2, 1845.

Six months after date, the Steamboat Belle Creole and owners promise to pay *Avery, Wayne & Co.,* or order, five hundred and four dollars, fifty-five cents, for value received in building materials furnished said boat, payable at the counting house of *Omer Lauve,* New Orleans.

For the steamer Belle Creole and owners,

DIMITRY & PLAISENT."

The petition is based upon the note which it recites, and refers to as annexed. It charges that *Dimitry & Plaisent* were, at the time of drawing said note, part owners, agents of the other owners, and also officers of the boat, and fully authorized to act in the premises; that the defendants were owners of the boat when the note was made, became by such ownership commercial partners, and are liable *in solido,* upon the note. They pray judgment for the amount of the note, interest, damages, costs of postage and of protest. The petition contained no count or charge for goods sold and delivered. There was a prayer for general relief. *Dimitry & Plaisent* were not made defendants. The answer of the defendants was a general denial.

Thus the issue in the cause was, whether the defendants were liable upon the note. There was strictly speaking no issue, whether the defendants were liable upon a contract for goods furnished. In this view of the pleadings, the question before us is, not whether the plaintiffs shall ultimately lose the price of any materials they may have furnished, but whether an action can be maintained against the defendants on this note. Now it appears from the evidence that, *Dimitry & Plaisent* had no express authority to bind the defendants by note. They are shown to have had authority to expend $24,000 in building a boat, and to draw bills of exchange for that amount on *Omer Lauve,* one of the defendants; it also appears that *Lauve* has accepted and paid bills to that amount; and that the subscription of the stockholders was made in Louisiana, where they lived, by their respective notes each for his share; and that the cost of building the boat was $37,900, being a large excess over the limit.

But it is contended that, though there was no express authority to make notes to bind the stockholders, yet that, as owners of a steamboat, they were by the express provisions of our Civil Code, commercial partners, and that the signers of the note on behalf of the boat and owners, being partners, imposed a partnership liability upon the defendants. Our Code in enumerating what classes of partnerships are commercial, includes " such as are formed for carrying personal property for hire in ships, or other vessels." Now, if it be conceded for the purposes of argument, (for we express no opinion upon the point,) that owners of steamboats would have the right to bind each other for supplies furnished to the boat, or for other matters appertaining to the boats' business, in the form and with the peculiar liabilities of bills of exchange and promissory notes, yet here a case is presented to us, where, under the imperfect evidence, the building of the boat seems to appertain to the foundation of the partnership, and involves inquiries as to the contribution of the members to its capital. The partnership seems, at the time when the note was made, to have been in the process of formation; or, at least, the relative position of the partners towards the partnership is, under the evidence, indistinct. It is contended by the defendant, and not without plausibility, that the facts proved at the trial are equally consistent with the supposition, of an intention on the part of the respective defendants to become partners in the business to be carried on provided certain things were done, as with that of an existing partnership. Societas coiri potest vel ex tempore vel sub conditione. Dig. Lib. 17, tit. 11, pro Socio. Voluntates etenim legitimè contrahentium omnimodò conservandæ sunt, Code, Lib. 4, tit. 37.

A person may agree to become a partner with others at a future time, provided certain things are done, or certain conditions accomplished; and, if others of the partners enter into contracts in the mean time, to hold all liable upon such contracts would be recognizing as effectual an unauthorized agency. Cases of this sort, arising from the preliminary steps for establishing a partnership, involve questions of great nicety; for in contemplation of law the partnership liability commences from the time the parties have agreed to act together for the common purpose, and preliminary acts are not always binding upon all connected with the contemplated association. See the doctrine on this subject, and its qualifications, as more fully stated in the case of *Dickinson* v. *Valpy*, 10 Barn. & Creswell, 128, and in Story on Partnership, § 150, &c.

The evidence before us in this case is very imperfect. The partnership agreement, or subscription-paper, is not before us, nor the power of attorney under which *Dimitry & Plaisent* went to Cincinnati to superintend the building of the boat. The evidence is also very vague, as to what took place between those agents and the plaintiffs. It may be also, though on this point, by reason of the imperfect state of the evidence, we do not express any opinion, that some of the defendants may have gone farther to incur liability than others; as for example, *Lauve,* who appears to have been actively concerned in the boat's affairs, as regards the business at New Orleans.

The court below has condemned all these parties *in solido*. We are unable to coincide in that decree, under the testimony before us; but as the obscurity of the case, as to matters of fact, appears by the record to be in some degree attributable to the defendants as well as to the plaintiffs, we think the ends of justice will be best answered by remanding the cause. In doing so, we will allow the plaintiffs to amend their pleadings, if they think proper, by declaring on the

original consideration of goods furnished, as well as on the note, and the defendants respectively to answer further in the cause.

It is therefore decreed that the judgment of the court below be reversed; and it is further decreed that this cause be remanded for further proceedings according to law, and with leave to the plaintiffs to amend their pleadings, and to the defendants respectively to answer further; the costs of this appeal to be paid by the appellees.